# EXHIBIT 3

# COLLECTIVE BARGAINING AGREEMENT – CRUISE VESSEL

### AGREEMENT BETWEEN

### MSC MALTA SEAFARERS COMPANY LIMITED

### AND

### FEDERAZIONE ITALIANA TRASPORTI – CISL – ITF
### INTERNATIONAL DEPT. - ITALY

### EFFECTIVE JANUARY 1, 2019

# CONTENT

Art. 1 - Parties and Applications of the Agreement ........................................................................ 3
Art. 2 - Application of the Agreement ............................................................................................ 3
Art. 3 - Wages ................................................................................................................................. 3
Art. 4 - Wages Calculation ............................................................................................................. 4
Art. 5 - Hours of Duty ..................................................................................................................... 4
Art. 6 - Saturday/Sunday and Holidays Allowances ...................................................................... 4
Art. 7 – Rest Period ........................................................................................................................ 4
Art. 8 - Overtime ............................................................................................................................. 5
Art. 9 - Service in Case of Emergency ........................................................................................... 5
Art. 10 - Dock Work ....................................................................................................................... 5
Art. 11 – Service in Warlike Operations Areas/High Risk Areas .................................................. 6
Art. 12 - Ship's Manning and Provisions ........................................................................................ 6
Art. 13 - Leave Pay ......................................................................................................................... 6
Art. 14 - Sick Pay and Medical Treatment ..................................................................................... 6
Art. 15 - Conditions regarding Sick Pay ......................................................................................... 7
Art. 16 - Compensation for Loss of Life ........................................................................................ 8
Art. 17 - Compensation for Disability ............................................................................................ 8
Art. 18 – Repatriation and Traveling Expenses ............................................................................ 10
Art. 19 - Food and Accommodation ............................................................................................. 10
Art. 20 - Subsistence Allowance ................................................................................................... 10
Art. 21 – Uniforms and Safety Equipment ................................................................................... 11
Art. 22 - Seafarer's Effects, Loss or Damage through Misfortune ............................................... 11
Art. 23 - Duration and Termination of the Contract .................................................................... 11
Art. 24 - Maternity ........................................................................................................................ 13
Art. 25 - Pre-employment documentation .................................................................................... 13
Art. 26 - Union's Membership and Representatives .................................................................... 13
Art. 27 - Breach of Agreement ..................................................................................................... 14
Art. 28 - Amendments to Agreement ........................................................................................... 14
Art. 29 - Waivers and Assignments. ............................................................................................. 14
Art. 30 - Training .......................................................................................................................... 14
Art. 31 - Grievances and Disputes ................................................................................................ 15
Art. 32 - Flying team / Supervisors .............................................................................................. 16
Art. 33 - Validity of the Contract .................................................................................................. 17
ANNEX 1: LIST OF VESSELS TO WHICH THIS CBA APPLIES ......................................... 18

### Art. 1 - Parties and Applications of the Agreement

The provisions of this Collective Agreement shall apply to the personnel enrolled or to be enrolled on board of the following:

| | |
|---|---|
| Vessels | : MSC ARMONIA, MSC LIRICA, MSC OPERA, MSC SINFONIA, MSC MUSICA, MSC ORCHESTRA, MSC POESIA, MSC FANTASIA, MSC SPLENDIDA, MSC MAGNIFICA, MSC DIVINA, MSC PREZIOSA, MSC MERAVIGLIA, MSC SEASIDE, and MSC SEAVIEW |
| | **MSC BELLISSIMA and MSC GRANDIOSA in service from 2019** |
| Flags | : Panama/Malta |
| Crew Employer | : MSC MALTA SEAFARERS COMPANY LIMITED |
| address | : Upper Vaults 4, Valletta Waterfront, Floriana FRN1914, Malta |
| Represented by | : LUIGI ANDOLFI |
| address | : Via A. De Gasperi 55 - Naples |
| Starting from | : **1st January 2019** |

according to I.L.O. Geneva, Conventions no. 29, 87, 98, 100, 105, 111, 138, and 182, as well as the Maritime Labour Convention, 2006 ("MLC"). As used herein the term "Company" shall mean MSC Cruise Management (UK) Limited.

### Art. 2 - Application of the Agreement

Any personnel to whom this Collective Agreement is applicable, in accordance with paragraph 1 above, shall be covered by the Agreement with the exception of the personnel entitled to the Italian National CBA (including Social Fund Insurance), with effect from the date on which he is engaged, whether he has signed articles or not, until the date on which he signs-off and/or the date until which, in accordance with this Agreement, the Company is liable for the payment of wages.

### Art. 3 - Wages

1. The monthly wage paid to each seafarer shall be according to the attached Annexes and shall, after allowing for all statutory deductions and/or deductions authorised by the seafarer, be paid to the personnel directly.

2. The wage shall be paid in cash or by Pre-paid Debit Card system in USD or Euro or other currency agreed with the seafarer, in accordance with the MLC.

3. The wage shall be calculated in US$ only. Wages payment will be effected in accordance with the MLC.

4. For the wages, see also Annex Five E showing the Equivalents list.

3

### Art. 4 - Wages Calculation

1. For the purpose of calculating wages, a calendar month shall be regarded as having 30 days.

2. Wages are applicable commencing from the date of embarkation till the date of disembarkation.

3. The Company will guarantee the minimum as per wage scales for the Hotel/Catering department also using part of the Service Charge. An additional amount (calculated in USD only) will be recognized also by the Service Charge to the Hotel/Catering personnel as per Company Performance policy.

### Art. 5 - Hours of Duty

1. The ordinary hours of duty of Deck/Engine personnel shall be 8 (eight) per day, Monday to Friday and 4 (four) on Saturday, totalling 44 (forty-four) per week.

2. The ordinary hours of duty of Hotel/Catering personnel shall be 8 (eight) per day, Monday to Friday, totalling 40 (forty) per week.

3. During the passenger embarkation/disembarkation operations, the hotel staff can be moved temporarily to perform other duties, managed by the Management on board.

### Art. 6 - Saturday/Sunday and Holidays Allowances

1. For Deck/Engine personnel, at least 1.5 (one and one half) days per week, 6.5 (six and a half) days per months shall be paid as Weekend Compensation. Any hour of duty performed in excess of 8 (eight) hours on Saturday and Sunday and all hours of duty on Public Holidays shall be paid at the rate stipulated in Col. 11 of the attached wages scales calculations (Annex 2).

2. For Catering personnel, on Saturdays and Sundays, the Company will pay 9 (nine) days monthly of 8 (eight) hours (72 hours per month) plus 2 hours for Publlic Holidays. All the above hours (74 hours per month) shall be paid for by overtime at the rate stipulated in the attached wage scales as per Annexes Three, Four, Five A, Five B and Five C, Five D.

### Art. 7 – Rest Periods

1. Each Seafarer shall have a minimum of 10 (ten) hours of rest in any 24 (twenty-four) hour period and 77 hours of rest in any seven-day period.

2. This period of 24 hours shall begin at the time a Seafarer starts work immediately after having had a period of at least 6 (six) consecutive hours off duty.

3. The 10 hours of rest may be divided into no more period than two periods, one of which shall be at least 6 (six) hours in length, and the interval between consecutive periods of rest shall not exceed 14 (fourteen) hours.

4. A short break of less than 30 minutes will not be considered as a period of rest.

5. Teaching, training, musters, fire-fighting and lifeboat drills and drills prescribed by national laws and regulations, or by international instruments shall be conducted in a manner that minimizes the disturbance of rest periods and does not induce fatigue.

6. Drills are recognized as regular work hours for those seafarers on a scheduled duty. They are not recognized as work hours for those seafarers that are off-duty..

### Art. 8 - Overtime

1. Overtime shall be recorded individually and in duplicate either by the Master or the head of the department. Such record shall be handed to the seafarer for approval every fortnight or at shorter intervals. Both copies must be signed by the Master and/or head of the department as well as by the seafarer, after which the record is final. One copy shall be handed over to the seafarer.

2. Any hours worked in excess of the fixed hours as per Article 5 - 6 shall be paid overtime according to the attached Annexes as applicable.

### Art. 9 - Service in Case of Emergency

Any hours necessary in case of an emergency, directly affecting the immediate safety of the vessel, its passengers and crew, of which the Master shall be the sole judge, or for safety or boat drill, or work required to give assistance to other vessels or persons in immediate peril shall be reckoned neither as ordinary nor as extra hours and shall not count for overtime payment.

### Art. 10 - Dock Work

1. Seafarers shall not be required or induced to carry out cargo handling and other work done by dock workers without the prior agreement of the ITF Dockers Union or Unions concerned and provided that the individual seafarer volunteer to carry out such duties, for which they shall be adequately compensated.

2. Compensation for such work performed during the normal working week, as specified in Article §6, shall be by the payment of the premium overtime rate (weekend and holiday hourly overtime rate as specified in the wages scales contained in Annex 2) for each hour or part of an hour that such work is performed, in addition to the basic pay. Any such work performed outside the normal working week will be compensated at double the premium overtime overtime rate (weekend and holiday hourly overtime rate as specified in the wages scales contained in Annex 2) for each hour or part of an hour that such work is performed.

### Art. 11 – Service in Warlike Operations Areas and High Risk Areas (HRA)

1. During the assignment a Seafarer shall be given full information of the war zone/HRA inclusion in the Ship's trading pattern and shall have the right not to proceed to a warlike operations area/HRA, in which event he shall be repatriated at Company's cost with benefits accrued until the date of return to the port of engagement.

2. Where a ship enters into an area where warlike operations take place, the Seafarer shall be paid a bonus amounting to double the basic wage for the duration of the ship's stay in such area subject to a minimum of 5 (five) days' pay. Similarly, to the compensation for disability and death shall be doubled.

3. A warlike operations area/HRA will be as agreed by the parties.

4. A Seafarer shall have the right to accept or decline the assignment without risking losing his employment or suffering any other detrimental effects.

### Art. 12 - Ship's Manning and Provisions

The vessel shall be manned according to the international conventions concerning safety. Provisions shall be adequately sufficient during voyages.

### Art. 13 - Leave Pay

1. Deck and engine rating shall be entitled to 8 (eight) days' leave pay for each month of service, prorated for partial months.

2. Hotel/Catering personnel shall be entitled to 4.5 (four point five) days' leave pay for each month of service, prorated for partial months.

3. Qualifying service shall count from the time a seafarer is originally engaged on board, whether he has signed the Contract or not, till the final sign-off.

### Art. 14 - Sick Pay and Medical Treatment

1. When a seafarer is signed off and landed at any port because of sickness or injury, his wages (basic monthly wage) shall continue until he has been repatriated at Company's expenses at the signing on port or at his home.

2. Wages (basic monthly wage) will continue thereafter on submission of satisfactory medical certificates for a maximum period of 130 (hundred and thirty) days. Furthermore, in cases of injury and at the Company's absolute discretion, a daily maintenance of basic wages may be paid for as long as the Company decides or until the seaman is declared to have reached maximum medical improvement (MMI) by an occupational doctor appointed by the crew manager on behalf of the Company.

3. The Company shall conclude appropriate insurance to cover themselves fully against the possible contingencies arising from the Articles of this Agreement.

4. A seafarer shall be entitled in the case of illness to medical assistance (including hospitalisation) at Company's expenses for a maximum period of 130 (one hundred and thirty) days following repatriation to his home port.

5. In the case of injury a seafarer shall be entitled to medical assistance (including hospitalisation) at the Company's expense provided that such treatment is necessary to improve his medical condition and such medical assistance will cease where the seafarer has reached maximum medical improvement for his injuries or it has been determined in accordance with Article 17 that the seafarer is disabled and disability compensation will be paid or the seafarer has been held by a doctor nominated by the Company to be permanently unfit for further seagoing duties.

6. Maximum medical improvement does not include cosmetic treatment or surgery, or treatment or surgery which will not improve the seafarer's ability to return to sea and or is not likely to improve his medical condition or ability to work.

7. National laws or regulations may exempt the Company from liability to defray the expense of medical care and board and lodging and burial expenses in so far as such liability is assumed by the public authorities when the level of interventions of public authorities is the same one of the of this CBA.

8. National laws or regulations may exclude the Company from liability in respect of:
   a. injury incurred otherwise than in the service of the ship;
   b. injury or sickness due to the wilful misconduct of the sick, injured or deceased seafarer; and
   c. sickness or infirmity intentionally concealed when the engagement is entered into.

### Art. 15 - Conditions regarding Sick Pay

All sickness payments shall be subject to the following conditions:

1. The seafarer shall comply with the instructions of the Company or their Agents at the port where he is landed, subject to medical approval;

2. The seafarer shall report his arrival at his own home or original place of engagement whichever is appropriate to the Company or their Agents as soon as possible after repatriation and shall submit to the Company complete copies of all medical records and a certificate of their current medical status on a form acceptable to the Company at least once every 30 days.

3. In the case of benefits payable under Article 14 (Sick Pay and Medical Treatment) expenses are not payable where the:
   a. injury incurred otherwise than in the service of the ship; or
   b. injury or sickness is due to the wilful misconduct of the sick or injured seafarer; or
   c. sickness or infirmity was intentionally concealed when the engagement was entered into.

### Art. 16 - Compensation for Loss of Life

1.  If a seafarer dies, regardless of fault but excluding injuries caused by a seafarer's wilful act or suicide, as a result of an accident whilst in the employment on the vessel, including accidents occurring whilst travelling to/from the vessel at the request of the Company or their Agent, or as a result of a marine peril, his/her immediate next of kin will receive a sum of US$ 90,000 and US$ 20,000 for each dependent child under the age of 21 subject to a maximum of four (4) children.

    If the seafarer does not leave a spouse, the aforementioned sum shall be paid to the Estate of the deceased seafarer to be administrated by the person or body authorized by law to act on behalf of the deceased Seafarer's Estate.

2.  The Company shall be insured against such possible contingencies.

3.  The compensation to the family is not subjected to taxation by the Company and any payment effected under this clause shall be without prejudices to any claim for compensation made in law but maybe offset against any such payment.

4.  FANIMAR (Italian National Seafarers' Fund)
    a.  The amount of US$ 90,000 is reached also with the contribution of FANIMAR (Italian National Seafarers' Fund) with Euro 38,500.
    b.  The FANIMAR payment is only applies to cases of accidental death while in the employment of the vessel, with the exclusion of travelling from/to the vessel.
    c.  In case of death from natural causes, the Company will recognize to the next of kin an amount of US$ 8,000 (at the next renewal this amount it will be re-negotiated with FANIMAR) and FANIMAR an additional amount of Euro 12,500.
    d.  For the terms and conditions of FANIMAR interventions of this article, see Annex 6.

5.  For the purposes of Articles 16 and 17 an "Accident" is defined as an external event or incident that is unplanned and unexpected, and unintentionally results in death or injury of a seafarer.

### Art. 17 - Compensation for Disability

1.  A seafarer who suffers injury as a result of an accident, regardless of fault but excluding injuries caused by a seafarer's wilful act, whilst in the employment of the vessel, including accidents occurring whilst travelling to or from the vessel, and whose ability to work is reduced as a result thereof, shall in addition to his sick pay, be entitled to compensation according to the provisions of this Article.

2.  The degree of disability which the employer, subject to this Agreement, is liable to pay shall be determined by a doctor appointed by the Company. If a doctor appointed by the seafarer and his Union disagrees with the assessment, a third doctor may be agreed jointly between the Company and the seafarer and his Union, and the third doctor's decision shall be final and binding on both parties.

8

3. The aforesaid medical report should determine the degree of disability based on the formula prescribed in the attached Annex 7, and the Company shall pay the seafarer disability compensation at a percentage based on the degree of disability as stated above. This compensation however, shall not exceed US$ 110,000 for Officers and US$ 90,000 for ratings.

4. The applicable disability compensation shall be in accordance with the degree of disability and rate of compensation indicated in the table hereunder as it follows:

| Degree of disability | Rate of Compensation | |
|---|---|---|
| | Ratings | Officers |
| % | US$ | US$ |
| 100 | 90,000 | 110,000 |
| 75 | 67,500 | 82,500 |
| 60 | 54,000 | 66,000 |
| 50 | 45,000 | 55,000 |
| 40 | 36,000 | 44,000 |
| 30 | 27,000 | 33,000 |
| 20 | 18,000 | 22,000 |
| 10 | 9,000 | 11,000 |

with any differences, including less than 10% disability, to be prorated.

5. Permanent Medical Unfitness-A seafarer whose disability is assessed at 50% or more under the attached Annex 7 shall, for the purpose of this paragraph be regarded as permanently unfit for further sea service in any capacity and entitled to 100% compensation, i.e. US$ 110.000 for Officers and US$ 90.000 for ratings. Furthermore, any seafarer assessed at less than 50% disability under the Contract but certified as permanently unfit for further sea service in any capacity by the Company doctor, shall also be entitled to 100% compensation.

6. Any payment effected under paragraphs 1. to 3. shall be without prejudice to any claim for compensation made in law, but may be deducted from any settlement or award in respect of such claims.

7. The above disability compensations are reached also with the contribution of FANIMAR (Italian National Seafarers' Fund) with Euro 36,000 (total disability) or prorated (only for a degree higher than 5%).

8. The FANIMAR compensation is recognised only in case of accident while in the employment of the vessel, with the exclusion of travelling from/to the vessel.

9. For the terms and conditions of FANIMAR coverage see Annex 6.

10. If a determination of disbility has been made under this Article, then the seafarer's right to sick pay and medical expenses, if still payable, shall cease on the date of determination of the Company doctor.

11. In the case of benefits payable under Article 16 (Compensation for Loss of Life), or Article 17 (Compensation for Disability), or Article 18 (Repatriation and Travelling Expenses), expenses are not payable where the:

a. injury incurred otherwise than in the service of the ship; or
b. injury or sickness is due to the wilful misconduct of the sick, injured or deceased seafarer; or
c. sickness or infirmity was intentionally concealed when the engagement was entered into.

### Art. 18 – Repatriation and Traveling Expenses

1. The Company shall pay the seafarer's travel to the vessel from the designated airport by scheduled air services closest to the seafarer's residence, and repatriation to the same airport after completion of the service period.

2. A Seafarer shall also be entitled to repatriation at the Company's expense:
   a. at the end of the contract period; or
   b. when disembarked as a result of sickness, injury, or maternity; or
   c. when the employment contract is terminated by the Company prior to the employment contract expiration date; or
   d. upon the loss, laying-up, or sale of the vessel; or
   e. in acccordance with Art. 23.3 and 23.4.

3. Repatriation shall take place in such a manner that it meets all reasonable requirements with regard to comfort. The Company shall be liable for the reasonable cost of maintaining the seafarer ashore until repatriation takes place.

### Art. 19 - Food and Accommodation

1. The Company shall provide the following for the use of each seafarer whilst he is serving on board:
   a. sufficient food of good quality;
   b. accommodation of adequate size and standard;
   c. one mattress and at least one pillow, three blankets, two sheets, one pillow-case and two towels (the sheets, pillow-case and towels shall be changed at least once a week);
   d. necessary cutlery and crockery.
   e. laundry facilities.
   f. accommodation and recreational facilities shall be in accordance with the criterias of the relevant ILO instruments.

### Art. 20 - Subsistence Allowance

1. Whilst on paid leave, Deck/Engine personnel shall be entitled to a daily subsistence allowance (US$ 18) according to the attached Schedule (Annex 2).

2. When food and/or accommodation is not provided on board the Company shall be responsible for providing food and/or accommodation of good quality ashore to all seafarers.

### Art. 21 – Uniforms and Safety Equipment

1. The vessel shall provide proper uniforms to seafarers which will be involved in the passenger operations (dinner room, cabins, bars, etc.).

2. When signing on the vessel will provide seafarers 2 (two) sets of uniforms, one free of charge and one at the charge of 100% of their value.

3. When signing off, 1 (one) set of uniforms must be returned to the uniform Storekeeper, presented in good order..

4. If the seafarer requires extra uniforms, for any reason, these will be charged at 100% of their value.

5. The Company shall provide the necessary personal protective and safety equipment for the use of each seafarer whilst serving on board. The equipment is the property of the Company. Personal protective equipment shall be returned when signing off. In connection with loading/unloading, or work with materials that are corrosive or damaging to health, seafarers shall at all times be informed as to the elements of danger involved and be equipped with personal protective equipment and working clothes.

### Art. 22 - Seafarer's Effects, Loss or Damage through Misfortune

1. When a seafarer to whom this Contract applies suffers total or a partial loss, or damage to his personal effects, as a casualty to the vessel, or as a result of fire, flooding, or collision, he shall be entitled to recover from the Company compensation up to a maximum of US$ 4,000.

2. The seafarer shall certify that any information provided with regard to lost property is true to the best of his knowledge.

### Art. 23 - Duration of Employment and Termination of the Contract

1. The seafarer shall be engaged for a specific period ("the Contract Period") during which the seafarer will serve on vessels covered by this Agreement. The duration of contract period is normally 9 (nine) months, with right of the Company to reduce or to extend this time, for a maximum of 2 (two) months for Hotel/Catering personnel and 1 (one) month for Deck and Engine personnel, scheduling relief at the most convenient port. The contract period can also be stipulated for a shorter duration.

   Company has the right to reduce the above Contract Period for a maximum of 4 (four) months. In this case, Seven days notice of termination of employment shall be given by both sides, in writing only.

   At the conclusion of an Employment Contract, that is, after the seafarer signs off the vessel at the end of the Contract Period, the seafarer will no longer be employed by the Company unless and until a new Employment Contract is signed. The Contract Period is "the voyage" for purposes of all applicable statutory and common law regardless of

whether the seafarer is transferred to a different vessel or vessels during the Contract Period.

Company has the right to reduce the above Contract Period for a maximum of 4 (four) months.

2.  For all newly employed seafarer the first three (3) months of the Contract Period shall be considered a probationary period. During and at the end of probationary period the Company, when not satisfied with the seafarer's performance, has the right to terminate the employment giving to the seafarer seven (7) days notice, paying the wages until the date of signing off and the repatriation expenses. In substitution of the seven (7) days notice, the Company can pay to the seafarer seven (7) days of the full salary (with the exclusion of the overtime, service charge, or other additional allowances as per Company's policy) plus the repatriation expenses.

    During the probationary period a new seafarer also has the right to terminate his employment by giving seven (7) days' written notice to the Company. In such case, the seafarer is liable for all his own repatriation expenses.

    The probationary period shall not apply to seafarers previously employed by the Company within a two (2) year period prior to being re-hired, unless a probationary period is requested by the Company for reintegration purposes.

3.  To preserve the Company's rights (in accordance with some police/immigration rules and regulations of various countries) in the case of personnel signing off at their own request or on account of dismissal from service before the end of contracted period of service on board, for every seafarer of the Hotel/Catering Department there is a monthly deduction from salary which will be reimbursed to the seafarer at the moment of the regular disembarkation as per the Agreement.

4.  A seafarer requested by the Company to leave his employment before the agreed period of service on board the vessel has expired, through no fault of his own (drunkenness, insubordination, smuggling, negligence, theft, etc. are considered faults) or on the loss, laying up or sale of the vessel, shall be entitled to receive compensation equivalent to 2 (two) months of basic monthly wage.

5.  If the seafarer signed on for a specific voyage is subsequently altered substantially with regard to the duration, longer than two months, he shall be entitled to a period contract such as para A) or cruise season termination (usually Spring and Fall).

6.  A seafarer shall be entitled to sign off immediately:
    a.  if the vessel is certified unseaworthy in accordance with the provisions of Chapter 1, Regulation 19, of the Safety Life at Sea Convention (SOLAS); or
    b.  if the vessel is not in possession of one of more of the certificates required under Chapter 1, Regulation 12 and 13 of SOLAS; or
    c.  if the Seafarer refuses to sail into a warlike operations area.

7.  The Company, in case of need and/or for operational reasons, can move a seafarer from one vessel to another vessel covered by this Agreement, maintaining the same rank or higher and the same terms and conditions as per the Employment Contract. The calculation of the period of service has to take into account the date of the first

embarkation. The expenditure to move from one vessel to another will be covered by the Company.

8. Each seafarer, on submission of certified personal reasons, can ask a period of temporary leave not exceeding 9 (nine) days, during his contract.
   a. Temporary leave is granted only if approved by the Master and Head of Department, certifying that the crew member's temporary absence does not lead to any operational problems and that it does not endanger the safety of passengers and crew members. In addition, it will also be necessary the final approval from the Crew Management.
   b. When the temporary leave is requested by the seafarer, his total salary will be suspended (he will be disembarked, for accounting purposes).
   c. During the temporary leave, the Company will not be responsible for prejudicial conducts damaging people or things, acts of vandalism, negligence, damages to public works or for other reason different from what indicated in the request of temporary leave.

### Art. 24 - Maternity

1. In the event of a pregnancy during the contract period:
   a. the seafarer shall advise the shipboard medical team to confirm the pregnancy;
   b. the company will repatriate the seafarer as soon as reasonably possible, but in no case later than the 24th week of pregnancy;
   c. the seafarer shall be entitled to 10 (ten) weeks' basic monthly wage, if the pregnancy was not known at the start of the contract period.
   d. a pregnancy is not considered an injury or sickness and the seafarer is not entitled to maintenance, cure, or Daily Sick Pay benefits when signing off due solely to pregnancy.

### Art. 25 - Pre-employment documentation

1. A seafarer shall be reimbursed for authenticated costs of pre-employment documentation which are agreed between the parties, other than the cost of the seafarer obtaining a national medical certificate as per MLC 2006 requirements.
2. The expenditure for a visa shall be borne by the Company. If the seafarer has to pay for a visa, the cost will be reimbursed on board by the Company.
3. A seafarer shall not pay any application fees, manning agency fees, or similar fees and any such fees shall be paid by the Company.
4. A seafarer shall declare, as part of the pre-employment medical examination, any pre-existing medical conditions and any medications being taken whether by prescription or otherwise. Wilfull failure to do so, voids entitlement to any benefits provided by this Collective Bargaining Agreement.

### Art. 26 - Union's Membership and Representatives

1. All seafarers to whom this agreement is applicable shall be members of FIT/CISL - ITF - International Department, Italy.

2. The Company recognises Union's right to nominate a representative on board the vessel among the personnel to whom this agreement is applicable.

3. FIT/CISL Union inspector will have free access on board and the Company agrees to accord, at its expense, one voyage per year to one FIT/CISL Inspector to visit the seafarers (if space/cabin available).

4. Company will appoint a responsible purser to handle all matters concerning this Contract and payments.

5. The Company and FIT/CISL agree that a monthly amount of US$ 3 (three) is deducted from the seafarer's gross salary for contribution to the FIT/CISL welfare system.

6. The Company shall pay a contribution, equivalent to 12.5% of the whole crew compliment, to the ITF Seafarers' International Assistance, Welfare and Protection Fund with the minimum of US$ 7,500.

7. With regard to the Union Fees see ANNEX No. 1.

### Art. 27 - Breach of Agreement

If the Company neglects to meet the requirements of this Agreement, the FIT/CISL on behalf of the seafarer, shall be entitled to take such measures against the responsible parties that may be deemed necessary to obtain redress.

### Art. 28 - Amendments to Agreement

If the Union and the Company mutually agrees on amendments in addition to the ones already stipulated in this Contract, such amendments shall be specified in the Special Agreement between FIT/CISL-ITF - International Dept., Italy and the Company.

### Art. 29 - Waivers and Assignments.

The Company undertakes not to demand or request any seafarer to enter into any document whereby, by way of waiver or assignment or otherwise, the seafarer agrees or promises to accept variations to the terms of this agreement or return to the Company, their servants or agents any wages (including backwages) or other emoluments due or to become due to him under this agreement; and the Company agrees that any such document already in existence shall be null and void and of no legal effect.

### Art. 30 - Training

1. The Company shall ensure that on board training and familiarisation is provided to each seafarer so as to comply fully with provisions of the IMO Convention Standards of Training, Certification and Watchkeeping, 1978 as amended. (STCW95). The costs involved to the company in providing such training and familiarisation are recognised under the heading of "IMO" in the attached Annexes.

2. In order to promote an increase in the number of trainees, a contribution towards the seagoing maintenance costs of trainees is recognised as an allowance under the heading "Training" in the attached Annexes. This allowance shall be exclusively used for training.

## Art. 31 - Grievances and Disputes

1. Seafarers shall continue to peacefully and satisfactorily perform their duties and the parties shall faithfully observe this Agreement while grievances and disputes are being resolved.

2. If the Seafarer feels that a provision of this Agreement has been violated or that he/she has been unfairly treated, the Seafarer shall present the complaint to his/her department head and if the Seafarer remains dissatisfied, to the HR Officer, Hotel Director, Staff Captain, Chief Engineer, or Master.

3. If the grievance remains unresolved after a period of sixty (60) days, the Seafarer may refer the matter to the Union representative who shall seek to resolve the matter solely with the Company designated representative. During this period, the decision of the Master shall govern until the designated representatives of the Company and the designated representative of the Union can resolve the grievance. The designated representative of the Union shall be Remo Di Fiore. The designated representative of the Company shall be Marco Maresca.

4. Where a Seafarer raises a grievance after leaving the vessel, the grievance shall be referred only to the designated representative of the Union - Remo Di Fiore, and to the designated Company representative - Marco Maresca.

5. Representatives of the parties shall promptly confer to resolve the grievance within sixty (60) days failing which the matter shall be referred mandatory and binding arbitration as per the terms of this Agreement.

6. Unless extenuating circumstances exist justifying delay, no grievance shall be recognized if raised more than thirty (30) days after the Seafarer has left the vessel.

7. Grievances and disputes which remain unresolved after a sixty (60) day period, must be referred to arbitration to the exclusion of any other legal or court proceeding as set forth in this Agreement. It is further agreed that any and all claims from a Seafarer against the Company, Company's parent, subsidiary and sister entities, Company's vessels or the operators of such vessels, Seafarer's Employer, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, Jones Act claims, claims for damages for personal injury, wrongful death, negligence, unseaworthiness, failure to provide prompt proper and adequate medical care, or maintenance and cure, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated in accordance with the terms and conditions in this Agreement. The seafarer and Union acknowledge that they knowingly and voluntarily waive any right they have to a jury trial. The arbitration referred to in this Article is exclusive and mandatory. No dispute may be joined with another lawsuit or in an arbitration with a dispute of another person, or resolved on a class-wide basis and each Seafarer waives any right to bring or participate in any class action, group action, collective action, or other similar litigation against the Company.

8. If the grievance or dispute is one involving the amount of earned wages paid to the Seafarer, the parties hereby agree that the Company shall have the right, without incurring any further liability, within one hundred and twenty (120) days of the Master

receiving written notice from the Seafarer of a grievance, or within one hundred twenty (120) days of the representatives of the Union and the Company, whichever is later in time, to either pay the amount claimed, by the Seafarer or to commence an arbitration to resolve the claim and deposit the amount claimed into an interest bearing account pending a determination of whether the claim has merit. In the event the Company deposits the claimed amount as provided, the parties agree that the sole amount to be paid to the Seafarer if the Seafarer's claim is later determined to have merit will be the amount claimed plus any accrued interest from when the dispute or grievance arose.

9. If the grievance or dispute involves the Seafarer as a party, the following arbitration procedure shall apply. For Filipino Seafarers the arbitration shall be in accordance with the rules of the standard POEA Contract of Employment.

10. For all other Seafarers, any grievance or dispute of any kind or nature whatsoever, with the exception of a wage dispute which is governed by the MSC Wage Grievance Policy and Procedure (including mandatory arbitration procedures found therein) shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract shall be referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.

11. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

12. The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by agreement.

13. Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

14. In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.

15. The Seafarer and MSC must arbitrate in the designated jurisdiction, to the exclusion of all other jurisdictions. The language of the arbitral proceedings shall be English. Seafarer agrees to appear for medical examinations by doctors designated by MSC in specialties relevant to any claims Seafarer asserts

### Art. 32 - Flying team / Supervisors / Work on Island

1. The Flying team / Supervisors are employed with specific tasks on board all the vessels of the Fleet, moving from one to another.

2. All seafarers to whom this Contract agreement is applicable, can spend part of their engagement period, on a Company Island, perfoming Technical duties linked to the Rank as Contract

3. In order to guarantee the social security coverage, the above positions will be collocated on board of a single vessel even if they are allowed to move from one to another.

4. The above positions are always covered for medical treatment, sickness, disability, etc.

5. The above positions can be employed for a short period of time in the office to deliver the reports, the results of training and all other specific activities.

6. The Seafarers' Employment Agreements will be formulated taking into account the above possibility to move from one vessel to another and in the office.

7. The P&I Club and Fanimar will be accordingly informed.

### Art. 33 - Validity of the Contract

This Contract is made the day of 31st December 2018 and shall remain in force between the Company and signatory Union up to: **31st December 2019.**

_____
on behalf of: HAnwo APONTE
the Company

_____
on behalf of:
the Union
(Capt. Remo Di Fiore)