UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-61399-CIV-SINGHAL/VALLE

DARWIN HUMBERTO CORTEZ MARTINEZ,

      Plaintiff,

v.

MSC CRUISES S.A. CO., *et al.*,

      Defendants.

_____/

## ORDER ON MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court on the Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss (DE [6]) filed by Defendants MSC Cruises S.A. Co., MSC Malta Seafarers Company Limited ("MSC Malta"), and MSC Cruise Management (UK) Ltd. ("MSC Cruise Management").  Plaintiff Darwin Humberto Cortez Martinez has filed a Response in Opposition (DE [8]), and Defendants have filed a Corrected Reply (DE [19]). On August 9, 2021, the Court also heard counsel's argument on the emergency nature of this action.  Lastly, the Court has considered the parties' supplemental briefing (DE [23], [24]).  For the reasons discussed below, the Court grants Defendants' Motion to Compel Arbitration.

## I.   BACKGROUND

In this maritime action, Martinez filed a five-count Complaint (DE [1-2]) in state court alleging five claims against Defendants: (I) negligence under the Jones Act; (II) unseaworthiness; (III) failure to provide maintenance and cure; (IV) failure to provide prompt, proper, and adequate medical care; and (V) a contractual disability claim.

Martinez is a citizen of El Salvador.  Compl. ¶ 2 (DE [1-2]).  According to the Complaint, MSC Cruises, S.A. Co. owns the subject vessel; MSC Malta is Martinez's employer; and MSC Cruise Management "controlled some operational aspects of the subject vessel." *Id.* ¶ 7 n.2.  According to the parties' other evidence, however, MSC Cruises, S.A. Co. was an active corporation registered in Florida until September 25, 2020, (DE [8], at 12), but is now an inactive entity, (DE [6-5] ¶ 5).  Defendants admit that MSC Cruise Management owned the vessel at issue in this case and that MSC Malta employed Martinez.  Resp. to Sur-Reply 5 (DE [24]).

It is undisputed that Martinez worked as a crewmember aboard the *MSC Poesia*.[1] Compl. ¶¶ 6, 11 (DE [1-2]).   Martinez alleges that on several occasions between September and December 2019, he presented to the medical center on the vessel with complaints of intense headaches, and the vessel's medical staff consistently documented Martinez's "uncontrollable high blood pressure."  *Id.* ¶ 8.  Nevertheless, Martinez alleges, the vessel's medical staff failed to promptly and properly diagnose and treat Martinez's underlying kidney condition, and they prescribed him a contraindicated medication that further aggravated his kidney condition.   *Id.* ¶ 9.  Martinez alleges that, as a result of Defendants' negligence that occurred on the vessel and at a shoreside hospital, Defendants caused Martinez to suffer kidney and cardiovascular injuries that became aggravated.  *Id.* ¶ 10.  Martinez's claims arise out of this allegedly negligent conduct.

Defendants removed the action to this Court under 9 U.S.C. § 205, 28 U.S.C. § 1331, and 28 U.S.C. § 1333.  (DE [1]).  They now move to compel arbitration under the

---

[1] The parties agree that Martinez began his employment aboard the *MSC Meraviglia* but was later transferred to the *MSC Poesia*—the relevant vessel here—in September 2019.  *See* Compl. ¶ 6 (DE [1-2]); Notice of Removal ¶ 8 (DE [1]); Ex. 3 to Mot. to Compel Arb. ¶¶ 4–5 (DE [6-3]).  Thus, any references to the *MSC Meraviglia* or its flag state of Malta are not dispositive here and have been omitted from this Order.

Collective Bargaining Agreement ("CBA") (DE [6-4]) between MSC Malta and Federazione Italiana Trasporti ("ITF"), an Italian trade union that represents maritime workers.  *See* (DE [6-2] ¶ 1); Resp. to Sur-Reply 2 (DE [24]).  The CBA is incorporated by reference into the Seafarer's Employment Contract ("the Employment Contract") (DE [6-2]) between Martinez, MSC Cruise Management, and MSC Malta.  (DE [6-2] ¶ 1).  Paragraph 16 of the Employment Contract also contains a choice-of-law provision:

> I further agre[e] that any nature out of [sic] this Employment Agreement or my employed [sic] aboard the vessel shall be governed by the *Laws of the vessel's flag state*, except as expressly provided herein, and any disputes hereunder shall be adjudicated [i]n that jurisdiction only.  I further agree that all rights and obligations contained in the [ITF CBA], as amended from time to time, apply to this Employment Agreement.

(DE [6-2] ¶ 16) (emphasis added).

Next, Article 31 of the CBA contains an arbitration provision:

**Art. 31 – Grievances and Disputes**

. . .

7. Grievances and disputes which remain unresolved after a sixty (60) day period, *must be referred to arbitration to the exclusion of any other legal or court proceeding* as set forth in this Agreement.  It is further agreed that *any and all claims from a Seafarer against the Company*, Company's parent, subsidiary and sister entities, Company's vessels or *the operators of such vessels*, *Seafarer's Employer*, and/or any officers, staff or crew of any of the Company's vessels, including, but not limited to, *Jones Act claims*, claims for damages for personal injury, wrongful death, negligence, *unseaworthiness*, *failure to provide prompt[,] proper[,] and adequate medical care*, or *maintenance and cure*, whether based in tort or contract or under the laws of any nation or jurisdiction, shall be arbitrated in accordance with the terms and conditions in this Agreement.  The seafarer and Union acknowledge that they knowingly and voluntarily waive any right they have to a jury trial.  The arbitration referred to in this Article is exclusive and mandatory.  No dispute may be joined with another lawsuit or in an arbitration with a dispute of another person, or resolved on a class-wide basis and each Seafarer waives any right to bring or participate in any class action, group action, collective action, or other similar litigation against the Company.

. . .

(DE [6-4], at 16) (emphasis added).  Subsections 10 and 11 of Article 31 require arbitration to be held in London:

> 10. For all other Seafarers, any grievance or dispute of any kind or nature whatsoever, with the exception of a wage dispute which is governed by the MSC Wage Grievance Policy and Procedure (including mandatory arbitration procedures found therein) shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Contract *shall be referred to arbitration in London* in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.
>
> 11. The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are commenced.

*Id.* at 17 (emphasis added).  The CBA itself applies to the *MSC Poesia*, among other vessels, and identifies its flag as "Panama/Malta."  *Id.* at 4.  The parties agree that the *MSC Poesia* is flagged in Panama.  *See* Ex. 3 to Mot. to Compel (DE [6-3] ¶ 8); Resp. in Opp'n 2 (DE [8]).  Defendants now move to compel arbitration under The Convention of the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention" or "the New York Convention").  Alternatively, Defendants move to dismiss the Complaint for *forum non conveniens*.

## II.   LEGAL STANDARD

Chapter 2 of Title 9 of the United States Code contains the Convention Act, which implements the New York Convention and applies to international arbitration agreements. *Escobar v. Celebration Cruise Operator, Inc.*, 805 F.3d 1279, 1283–84 (11th Cir. 2015) (citations omitted); *see* 9 U.S.C. §§ 201–08.  Section 202 of the Convention Act provides that "[a]n arbitration agreement or arbitral award arising out of a legal relationship,

whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention."  9 U.S.C. § 202.  A court that has jurisdiction under chapter 2 "may direct that arbitration be held in accordance with the agreement at any place therein provided for," whether within or out of the United States.  *Id.* § 206; *see also Escobar*, 805 F.3d at 1284 (noting that the New York Convention "generally requires the courts of signatory nations to give effect to private arbitration agreements").  El Salvador, Panama, Malta, the United States, and the United Kingdom are all signatories to the New York Convention, so there is no question that the Convention applies in this case.  *See* United Nations Commission on International Trade Law, *Status: Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, 1958)*, available at https://uncitral.un.org/en/texts/arbitration/conventions/foreign_arbitral_awards/status2 (last visited Aug. 13, 2021).

The Eleventh Circuit has made clear that the Convention *requires* arbitration "so long as (1) the four jurisdictional prerequisites are met and (2) no available affirmative defense under the Convention applies."  *Suazo v. NCL (Bahamas), Ltd.*, 822 F.3d 543, 546 (11th Cir. 2016) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1276 (11th Cir. 2011)).  The four jurisdictional requirements are:

> (1) there is an agreement in writing within the meaning of the Convention; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not an American citizen, or that the commercial relationship has some reasonable relation with one or more foreign states.

*Northrop & Johnson Yachts-Ships, Inc. v. Royal Van Lent Shipyard, B.V.*, 2021 WL 1157833, at *3 (11th Cir. Mar. 26, 2021) (quoting *Bautista v. Star Cruises*, 396 F.3d 1289,

1294 n.7 (11th Cir. 2005)).  At this arbitration-enforcement stage, the limited available defenses are that the "agreement is null and void, inoperative or incapable of being performed." *Suazo*, 822 F.3d at 546 (emphasis removed) (quoting Convention, art. II(3)). "The null-and-void clause encompasses only those defenses grounded in standard breach-of-contract defenses—such as fraud, mistake, duress, and waiver—that can be applied neutrally before international tribunals." *Escobar*, 805 F.3d at 1286 (citing *Bautista*, 396 F.3d at 1302).

"In determining whether the parties agreed to arbitrate the dispute within the meaning of the Convention," Federal Arbitration Act ("FAA") principles guide the analysis. *Northrop & Johnson Yachts-Ships, Inc.*, 2021 WL 1157833, at *3 (citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).  Under the FAA, the court applies a "presumption in favor of arbitration," which is even "stronger when the Convention is implicated." *Id.* (citations omitted); *see also Escobar*, 805 F.3d at 1286 ("[A] district court must be mindful that the Convention Act generally establishes a strong presumption in favor of arbitration of international commercial disputes." (internal quotation marks omitted) (quoting *Lindo*, 652 F.3d at 1272)).  And because this is a maritime action and the dispute is not inherently local, general common law governs the interpretation of the contracts. *See Internaves de Mexico s.a. de C.V. v. Andromeda Steamship Corp.*, 898 F.3d 1087, 1093 (11th Cir. 2018).

## III.   DISCUSSION

Defendants move to compel arbitration in London under the CBA.  Martinez opposes arbitration for two primary reasons: (1) the first jurisdictional element of an

agreement to arbitrate under the Convention is not satisfied because the Employment Agreement and CBA conflict with respect to the required forum for employment-related disputes (adjudication within a court's jurisdiction versus arbitration) and the applicable law for resolving the disputes (Panamanian versus English law); and (2) the affirmative defenses of mistake or waiver—resulting from the conflicting provisions within the Employment Contract and CBA—apply to render any agreement null and void.

### A. Jurisdictional Elements

First, Martinez argues that there was no "meeting of the minds" regarding an agreement to arbitrate. He contends that the terms of the Employment Contract and CBA conflict, so they cancel each other out and negate any agreement to arbitrate. The Court disagrees. It is true that, under the Employment Contract's terms, any disputes relating to Martinez's employment aboard the vessel are governed by the laws of the vessel's flag state, Panama, and are to be adjudicated only in that jurisdiction. (DE [6-2] ¶ 16). It is also true that, under the CBA's terms, "any and all claims from a Seafarer" against MSC Malta and MSC Cruise Management must be arbitrated, (DE [6-4], at 16), and "any dispute arising out of or in connection with" the CBA shall be referred to arbitration in London and is governed by English law, *id.* at 17.

As Defendants note in their Reply, *see* (DE [19], at 2–3), Martinez's argument overlooks the remaining clause of Paragraph 16 of the Employment Contract—that Panamanian law applies "except as expressly provided" in the Employment Contract. *See* (DE [6-2] ¶ 16). Although a dispute under the Employment Contract "shall be adjudicated [i]n [Panama] only," this clause does not result in any conflict because the next sentence expressly states that "all rights and obligations" within the CBA apply to the

Employment Contract, and the CBA is incorporated by reference into the Employment Contract.  *See id.* ¶¶ 1, 16.  In turn, subsection 7 of Article 31 of the CBA makes clear that arbitration "is exclusive and mandatory" and that arbitration is "to the exclusion of any other legal or court proceeding . . . ."  (DE [6-4], at 16).  Most importantly, the CBA expressly requires arbitration of Martinez's type of claims: Jones Act; unseaworthiness; failure to provide prompt, proper, and adequate medical care; maintenance and cure; and the contractual disability claim encompassed within the "including, but not limited to" clause.  *See* (DE [6-4], at 16).[2]

The Court interprets the Employment Contract's and CBA's provisions together to mean that Panamanian law in Panama's jurisdiction *generally* governs contractual disputes or remedies, except for *specific* types of employment claims that must be arbitrated, which themselves are governed by English law applied in arbitration in London. *Cf. Open Sea Inv., S.A. v. Credit Agricole Corp. & Inv. Bank*, 2018 WL 1120902, at *5 (S.D. Fla. Jan. 12, 2018) ("The forum selection clause applies if the parties must resort to the court to obtain judicial intervention, *e.g.*, to compel arbitration [in the first instance], seek enforcement of a subpoena, or confirm an arbitral award. The Court therefore concludes that the jurisdictional clause and the arbitration provision are not inconsistent as to render the arbitration provision invalid."). Construing the Employment Contract and CBA together to give effect to the arbitration provision also comports with principles of

---

[2] The Court notes that, for purposes of Martinez's pending motion for partial summary judgment on count III for maintenance and cure, the parties disagree about whether Martinez suffered a "work-related injury" as opposed to an "illness" aboard the vessel, which is a necessary distinction for determining whether the CBA's provision covering sick pay and medical treatment applies.  *See* (DE [7], at 3); (DE [13], at 2–3); (DE [6-4], at 7–8).  The parties did not raise this distinction in their briefing on the Motion to Compel Arbitration, though they did touch on it at the hearing.  In any event, the Court finds that the CBA expressly requires arbitration of count III because it is a claim for maintenance and cure; the scope of that claim is not for this Court to determine.

common-law contractual interpretation.  *See Internaves de Mexico s.a. de C.V.*, 898 F.3d at 1093 ("[W]hen interpreting an international arbitration agreement, we ascertain the parties' intent through plain contractual language; we work to interpret the contract harmoniously to avoid conflict and give meaning to all of the provisions; we are obliged to apply any contractual clauses designed to resolve intra-contractual conflicts; we favor the specific terms over the more general language; and we strive to give the contract coherent meaning if we can, rather than capitulate in the face of apparent ambiguity.").[3]

Further, even if the Court were to accept Martinez's argument that no arbitration agreement exists because there was no "meeting of the minds," it would not confer a basis for denying arbitration under the Convention.  "Parties have an 'agreement in writing' under the Convention if there is 'an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.'" *Quiroz v. MSC Mediterranean Shipping Co. S.A.*, 522 F. App'x 655, 661 (11th Cir. 2013) (quoting Convention, art. II(2)).  The Eleventh Circuit has made clear that, where it is undisputed that a written agreement exists under the Convention, a party cannot avoid arbitration by "seek[ing] to superimpose an additional requirement that the agreement be 'validly formed' in compliance with" some other law.  *See id.*  Martinez signed the Employment Contract, which expressly indicates that he agreed to all obligations in the CBA—including the arbitration provision.  Yet Martinez maintains that the contract was

---

[3] Martinez also argues that the Employment Contract's terms of "adjudicate[]" and "jurisdiction" conflict with the CBA's arbitration provision because the Employment Contract's terms imply litigation in a court of law. *See Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011).  But as Defendants point out, the definition of "adjudicate" does not require *only* litigation in a court before a judge. *See Adjudicate*, Oxford English Dictionary ("[t]o pronounce or decree by judicial sentence, *or by a similar legal or official ruling*" (emphasis added)); *Adjudicate*, Oxford Advanced Learner's Dictionaries ("to make an official decision about who is right between two groups or organizations that agree"); *Adjudicate*, Black's Law Dictionary (11th ed. 2019) (second definition pointing to dictionary entry for "adjudge (2)," which states "[t]o deem or pronounce to be").

not validly formed under principles of contract law because the parties did not agree on the essential term of dispute-resolution procedures. Like in *Quiroz*, Martinez is seeking to impose an additional requirement not required under the Convention. *See* 522 F. App'x at 661–62. Thus, the Court rejects Martinez's argument and finds that the first jurisdictional element of an agreement to arbitrate is satisfied.

Martinez also appears to argue in passing that the second jurisdictional element is not satisfied. *See* Resp. in Opp'n 5–6 (DE [8]). The Court disagrees. The second element is also satisfied here because the CBA provides for arbitration within the territory of a signatory nation—England. *See Northrop & Johnson Yachts-Ships, Inc.*, 2021 WL 1157833, at *3. Martinez does not dispute that the third and fourth jurisdictional requirements are met, and the Court finds that they are: The parties have a commercial relationship where Defendants employed Martinez as a crewmember on a vessel, and Martinez and MSC Malta—parties to the agreement—are not American citizens. *See id.*; *see also* (DE [6-2]); (DE [6-4], at 4).

### B. Affirmative Defenses

Next, the Court must determine whether Martinez has asserted any of the limited affirmative defenses that would preclude arbitration. He asserts that waiver and mistake apply here, resulting in the agreement being null and void. *See Escobar*, 805 F.3d at 1286. The Court disagrees.

Under the common law of contracts, "[a] mistake is a belief that is not in accord with the facts." Restatement (Second) of Contracts § 151 (1981). More specifically, it is "an unintentional act or omission arising from ignorance, surprise, imposition or misplaced confidence; it exists when a person under some erroneous conviction of law or fact does

or omits to do some act which, but for the erroneous conviction, that person would not have done or omitted."  27 Williston on Contracts § 70:1 (4th ed.).  "Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154."  Restatement (Second) of Contracts § 152 (1981).  Section 154, in turn, provides that one of the situations in which a party bears the risk of mistake is when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient."  *Id.* § 154(b).

Martinez relies on a somewhat different definition of mistake under Florida law: "A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument."  *Dantzler, Inc. v. PNC Bank, Nat'l Ass'n*, 946 F. Supp. 2d 1344, 1369 (S.D. Fla. 2013) (quoting *Circle Mortg. Corp. v. Kline*, 645 So. 2d 75, 78 (Fla. 4th DCA 1994)).  He argues that the parties "clearly made" a mutual mistake by scrivener's error or inadvertence when they agreed in the Employment Contract to adjudicate disputes in Panama's jurisdiction but expressed something different in the CBA by providing for arbitration in London under English law.  Resp. in Opp'n 8 (DE [8]).  The Court is unpersuaded.  First, even if this were considered a discrepancy, it can by no means be considered a simple "scrivener's error."  *See Scrivener's Error*, Black's Law Dictionary (11th ed. 2019) (pointing to dictionary entry for "clerical error," which states as an example "a drafter's or typist's technical error that can be rectified without serious doubt about the correct reading").  Second, Martinez has

provided no evidence establishing that this purported discrepancy is a product of inadvertence.  Again, as discussed above, the Court does not find that the Employment Contract's and CBA's provisions conflict, and there is no evidence that the parties entered into the contracts under some erroneous assumption of fact or law that formed the basis of the contracts.  Thus, the Court does not find that Martinez has presented any evidence of mutual mistake regarding the memorialization of the parties' intent.

Martinez also argues that Defendants have waived arbitration.  Under federal common law, "[w]aiver is the voluntary, intentional relinquishment of a known right." *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1359 (11th Cir. 2018) (alteration in original) (quoting *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341, 1347 (11th Cir. 1994)).  Waiver requires "(1) the existence, at the time of the waiver, of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit." *Witt v. Metro. Life Ins. Co.*, 772 F.3d 1269, 1279 (11th Cir. 2014) (alterations omitted) (quoting *In re Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982)).  "Where a party alleges an implied waiver, 'the acts, conduct, or circumstances relied upon to show waiver must make out a clear case.'" *Id.* (quoting *In re Garfinkle*, 672 F.2d at 1347).

In the more specific context of arbitration under chapter 1 of the FAA (not under the Convention), the Eleventh Circuit has established a two-part test for determining whether a party has waived its right to arbitrate:  "First, we decide if, 'under the totality of the circumstances,' the party 'has acted inconsistently with the arbitration right,' and, second, we look to see whether, by doing so, that party 'has in some way prejudiced the other party.'" *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315–16 (11th Cir. 2002)

(quoting *S & H Contractors, Inc. v. A.J. Taft Coal Co.*, 906 F.2d 1507, 1514 (11th Cir. 1990)).  "[W]hether waiver has occurred 'depends upon the facts of each case.'"  *Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 932 (11th Cir. 2019) (quoting *Burton-Dixie Corp. v. Timothy McCarthy Constr. Co.*, 436 F.2d 405, 408 (5th Cir. 1971)).

Here, Martinez argues that Defendants waived their right to arbitrate by entering into the Employment Contract *after* the CBA.  Resp. in Opp'n 8–9 (DE [8]).  Martinez contends that—by Defendants' own invitation—litigating an employment-related dispute within a Panamanian court's jurisdiction under the Employment Agreement supersedes arbitration of an employment-related dispute in London under the CBA.  He also points to a provision of the Employment Contract that states: "The Ship's Articles shall be deemed for all purposes to include the t[]erms of this Contract (including the applicable ITF Agreement) and the Company shall ensure that the Ship's articles reflect these terms.  *These terms shall take precedence over all other terms*."  (DE [6-2] ¶ 2) (emphasis added).  Martinez also argues that "the applicable ITF Agreement" is ambiguous in this context because "the ITF *collective* agreement (CBA)" is used elsewhere throughout the Employment Contract; thus, the Employment Contract, he argues, supersedes the CBA. *See* Sur-Reply 2 & n.1 (DE [23]).  In support, he relies on *Dasher v. RBC Bank (USA)*, 745 F.3d 1111 (11th Cir. 2014), where the Eleventh Circuit held that a later agreement may supersede a prior one under certain circumstances:

> We agree with the Second and Sixth Circuits, and hereby hold that an entirely superseding agreement renders a prior agreement's arbitration clause ineffective, even if the superseding agreement is silent on arbitration. The threshold determination of whether a subsequent agreement entirely superseded a prior agreement is made under state law, without applying the FAA's presumption.  If the subsequent agreement only partially supersedes the prior agreement, amends it, or waives some but not all of its provisions, the second question is whether the arbitration provision was

13

among the superseded, amended, or waived provisions.  If, however, the subsequent agreement entirely superseded the prior agreement, then the second question is whether the subsequent agreement alone supports a motion to compel arbitration, and this determination is also made under state law without applying the FAA's presumption.

*Id.* at 1122–23 (footnote omitted).

The Court disagrees with Martinez.   There is no "entirely superseding agreement"—or even a partially superseding agreement—here.  *See id.* at 1122.  To the contrary, the later-executed Employment Contract expressly incorporated all the "rights and obligations" of the earlier-executed CBA.  *See* (DE [6-2] ¶ 16).  Nor does the Court find any ambiguity about which "ITF agreement" constitutes the terms of the contract; the preceding and subsequent provisions define the CBA as the incorporated agreement. Thus, the CBA's arbitration provision remains in effect.

Further, there is no clear indication that the parties intended to do away with the arbitration provision in the CBA by executing the Employment Contract.  *See Navarette v. Silversea Cruises Ltd.*, 2014 WL 11444105, at *3 (S.D. Fla. June 24, 2014), *aff'd*, 620 F. App'x 793, 797 (11th Cir. 2015) ("[W]hen a party seeking to avoid arbitration contends that the clause providing for arbitration has been superseded by some other agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." (quoting *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 368 (4th Cir. 2012))). Consequently, Defendants cannot have *intended* to waive arbitration when they expressly stated in the Employment Contract that the CBA applies.  *See Witt*, 772 F.3d at 1279. The Court is also unpersuaded by Martinez's argument that the parties' use of "conspicuous red font" in the Employment Contract has any legal effect in this context. *See* Sur-Reply 3 (DE [23]).

Lastly, even under the more specific *Ivax Corp.* waiver test that applies to arbitration under chapter 1 of the FAA[4], the Court also finds that Defendants have not acted inconsistently with their arbitration right.  *See* 286 F.3d at 1315–16.  When Martinez filed suit in state court, Defendants removed the case to this Court and moved to compel arbitration.  There is no evidence before the Court that Defendants have engaged in any other conduct that qualifies as waiver.  Thus, Martinez has failed to establish that the affirmative defense of waiver applies to preclude arbitration.

## IV.   CONCLUSION

In summary, because all four jurisdictional prerequisites of an international arbitration agreement under the New York Convention are satisfied, and because Martinez has failed to establish the affirmative defenses of mistake or waiver, the Court must compel arbitration in London under the parties' Employment Contract and CBA.  The Court will stay the case pending arbitration.[5]  Thus, the Court need not reach Defendants' alternative argument that the Complaint should be dismissed for *forum non conveniens*.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that:

---

[4] The Court has not located any Eleventh Circuit case expressly holding that the two-part waiver test under chapter 1 of the FAA is the same test that should be applied to finding waiver under the Convention (chapter 2 of the FAA).  In any event, Martinez still does not satisfy *Ivax Corp.*'s two-part waiver test even if it applied.

[5] Under chapter 1 of the FAA—"*on application of one of the parties*"—the Court is required to stay an action when it is "satisfied that the issue involved in such suit or proceeding is referable to arbitration" under an arbitration agreement.  9 U.S.C. § 3 (emphasis added).  And chapter 2 of the FAA provides that "chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States."  9 U.S.C. § 208.

At the August 9 hearing, Defendants conceded that, although they did not expressly request a stay pending arbitration in their Motion, courts within this district rule both ways: some dismiss the case, and some stay the case.  Here, because of the emergency nature of this action, the Court will stay the case pending arbitration to save Martinez the potential need and expense of refiling the case.

1. Defendants' Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss (DE [6]) is **GRANTED IN PART AND DENIED AS MOOT IN PART**.  The motion to compel arbitration is **GRANTED** as discussed above.  The motion to dismiss on the ground of *forum non conveniens* is **DENIED AS MOOT**.  If *forum non conveniens* remains an issue in the future, Defendant may file a renewed motion to dismiss on that basis.

2. This case is **STAYED** pending arbitration, and all other pending motions are **DENIED AS MOOT**.

3. Within **14 days** of the final result or disposition of arbitration, the parties shall file a joint status report advising the Court of the status of this case.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 20th day of August 2021.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel via CM/ECF

16